**In re ADDISON COMMUNITY HOSPITAL AUTHORITY, Debtor.**

**Bankruptcy No. 92–02336–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 27, 1994.

James Magee, Jr., Cincinnati, OH, Stuart A. Gold, Southfield, MI, local co-counsel, for debtor.

Sandra Hazlett, Ann Arbor, MI, for concerned citizens.

*SUPPLEMENTAL OPINION*

STEVEN W. RHODES, Bankruptcy Judge.

Concerned Citizens for Addison Community Hospital Authority ["Concerned Citizens"] filed a motion to intervene in this chapter 9 proceeding under Fed.R.Bankr.P. 2018. For the reasons stated in this opinion,[1] the Court concludes that the motion should be denied, but that members of Concerned Citizens who are creditors must be allowed an opportunity to be heard under 11 U.S.C. § 1109.

### I.

On February 26, 1992, Addison Community Hospital Authority ["Addison"] filed a voluntary chapter 9 bankruptcy petition as an inter-municipal hospital authority organized pursuant to the Joint Hospital Authority Act of the State of Michigan. The purpose of the Joint Hospital Authority Act ["Act"] is to establish a municipal hospital. The by-laws of Addison provide for quality assurance to include "review of utilization of the Hospital's resources to provide for their allocation to patients in need of them." Addison serves

---

1. This opinion supplements a bench opinion given on September 27, 1993.

**648**

five political subdivisions in the Lenaw-ee/Hillsdale county area.

Concerned Citizens is an unincorporated group of citizens from the area serviced by Addison. All of these citizens are taxpaying owners of real estate, and some are trade creditors of Addison. Both Addison and an interested third party, SurgiCon, Inc., have responded in opposition to this motion.

On July 31, 1992, SurgiCon, Inc. and the debtor entered into an agreement to provide hospital care.[2] Specifically, SurgiCon agreed to develop and provide medical/surgical ser-vices and an urgent care program. More-over, SurgiCon holds a secured claim for $276,971.34 for the cost of completion of re-pairs and maintenance of the hospital facility. Pursuant to an assignment dated December 23, 1992, SurgiCon acquired the claim of Blue Cross/Blue Shield of Michigan against Addi-son in the amount of $442,590 arising under an executory contract.

## II.

Concerned Citizens alleges that the chap-ter 9 plan submitted by Addison does not comply with the intended purpose of the hospital as provided in both the Act and the by-laws. Concerned Citizens asserts stand-ing to intervene in this chapter 9 proceeding, claiming its members will be affected as tax-payers in the event that more taxes are required. In the alternative, it will be affect-ed if the hospital is transferred out of the hospital authority to a private profit-making entity that is not bound by the Act or the by-laws. By allowing intervention, Concerned Citizens argues that its members will be assured that the plan comports with the in-tended purposes of Addison. Finally, Con-cerned Citizens contends that its members have a right to intervene under 11 U.S.C. § 943 as "special tax payers."

Addison asserts that Concerned Citizens has no standing to intervene because it is not registered with the Michigan Secretary of State as either a political action committee or lobbyist group. Second, Addison charges that Concerned Citizens has failed to show

sufficient cause to intervene because there are sufficient controls to oversee the develop-ment and confirmation of a plan.

SurgiCon maintains that the motion by Concerned Citizens contains "gross and irre-sponsible" misstatements regarding the valid and duly authorized contractual arrange-ments between SurgiCon and Addison. Sur-giCon also states that Concerned Citizens has failed to identify any interest that is required to be protected or is not already protected by Addison's counsel. Finally, SurgiCon asserts that Concerned Citizens lacks standing to intervene, but fails to pro-vide the Court with any reasoning in support of this assertion.

There are three issues before the Court in this matter. The first is whether Concerned Citizens has a statutory right to be heard under 11 U.S.C. § 1109. The second is whether Concerned Citizens has a right to intervene under Fed.R.Bankr.P. 2018. The third is whether the members of Concerned Citizens are "special tax payers" and, there-fore, have a right to intervene under 11 U.S.C. § 943.

## III.

Chapter 9 of the Bankruptcy Code was drafted solely for municipalities. The provi-sion allows debt adjustment which fosters the continuance of municipalities rather than their dissolution. Because the purpose of municipalities (i.e. police protection, fire pro-tection, sewage, garbage removal, schools, hospitals) is to provide essential services to residents, it is crucial that chapter 9 relief allow these entities enough flexibility to re-main viable. H.R.Rep. No. 1011, 100th Cong., 2d Sess. 2 (Nov. 3, 1988), *reprinted in* 1988 U.S.C.C.A.N. 4115, 4116.

Congress specifically focused, in drafting chapter 9, on the debt adjustment of munici-palities as a way to allow municipalities to continue in existence. Consequently, the ti-tle of chapter 9 is "Adjustment of Debts of a Municipality." In fact, during congressional debate, the chairman of the subcommittee indicated that Congress used the word

---

**2.** The contract was approved at a public meeting held on July 30, 1992. The contract is in full

compliance with applicable Michigan law and the by-laws of Addison.

"bankruptcy" in this bill only because the mandate to pass this piece of legislation stemmed from the constitutional provision which uses the word "bankruptcy." 121 Cong.Rec. H39413–14 (daily ed. Dec. 9, 1975) (statement of Rep. Badillo).

█ The general policy considerations underlying the municipal debt adjustment plan of chapter 9 are the same as that of chapter 11 reorganization: to give the debtor a breathing spell from debt collection efforts and establish a repayment plan with creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963. A primary distinction between chapter 11 and chapter 9 proceedings is that in the latter, the law must be sensitive to the issue of the sovereignty of the states. "The powers of the court are subject to a strict limitation—that no order or decree may in any way interfere with the political or governmental powers of the petitioner, the property or revenue of the petitioner, or any income-producing powers." 121 Cong.Rec. H39409–10 (daily ed. Dec. 9, 1975) (statement of Rep. Edwards). Consequently, chapter 9 avoids placing any restrictions on the powers of the states in the exercise of their sovereign rights and duties.

Congress included a provision in chapter 9 which limits the jurisdiction and the power of the court. Section 904 states:

Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. This section makes clear that the court may not interfere with the choices a municipality makes as to what ser-

vices and benefits it will provide. H.R.Rep. No. 595, 398.

The foundation of § 904 is the doctrine that neither Congress nor the courts can change the existing system of government in this country. The powers of the federal government are limited by the Constitution. The powers that are not given to the federal government are reserved to the states. One of the powers reserved to the states is the power to create and govern municipalities. 121 Cong.Rec. H39413–14 (statement of Rep. Badillo). Therefore, chapter 9 was created to give courts only enough jurisdiction to provide meaningful assistance to municipalities that require it, not to address the policy matters that such municipalities control.

The United States Supreme Court and the courts of appeals have stated that the jurisdiction of the bankruptcy court in chapter 9 cases is limited to disapproving or approving and carrying out a proposed plan for debt adjustment. H.R.Rep. No. 595, 262–64. During the developmental period of a plan, the court may not interfere with the distribution and delegation of power established by state law.

After a plan is filed, but prior to confirmation, creditors may file written acceptances or rejections of the plan and any modifications. 11 U.S.C. § 1126 (made applicable to chapter 9 proceedings through 11 U.S.C. § 901(a)). Moreover, under 11 U.S.C. § 943, a "special tax payer"[3] may object to confirmation of the plan.

### IV.

Federal Rules of Bankruptcy Procedure 2018(a), which implements § 1109(b), provides for permissive intervention.

**Permissive Intervention.** In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to

---

**3.** "Special tax payer" is defined in 11 U.S.C. § 902(3) as a "... record owner or holder of legal or equitable title to real property against which a special assessment or special tax has

been levied the proceeds of which are the sole source of payment of an obligation issued by the debtor to defray the cost of an improvement relating to such real property."

intervene generally or with respect to any specified matter.[4]

Fed.R.Bankr.P. 2018(a).

■ Rule 2018(a) provides for intervention by entities not otherwise having a right to participate in the bankruptcy case under § 1109 or other provisions. *See* Fed. R.Bankr.P. 2018 advisory committee's note (1983). Consequently, an entity given the right to be heard under § 1109 need not seek leave under Rule 2018(a) to intervene in a case. 8 *Collier on Bankruptcy* § 2018.03, at 2018–5 n. 2 (Lawrence P. King ed., 15th ed. 1993); *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1286 (5th Cir.1985).

### A.

■ The statutorily granted right to be heard by this Court is found by 11 U.S.C. § 1109(b). Section 1109(b), made applicable through 11 U.S.C. § 901(a), provides that a party in interest may raise and may appear and be heard on any issue in a case under this chapter. The term "party in interest" is very broad. Section 1109 provides that a party in interest includes the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder or any indentured trustee, but the list is non-exhaustive.[5] Clearly, § 1109 affords creditors "party in interest" status. Consequently, any and all members of Concerned Citizens who are creditors have an automatic statutory right to be heard on any issue in the bankruptcy proceeding under this section of the Code, and thus need not seek to intervene under Rule 2018.

■ For the remaining members of Concerned Citizens who are not creditors, § 1109(b) must be broadly construed to permit parties affected by the proceeding to appear and be heard. *In re Bumper Sales, Inc.,* 907 F.2d 1430 (4th Cir.1990); *Matter of*

*James Wilson Associates,* 965 F.2d 160 (7th Cir.1992). In interpreting who is a "party in interest," this Court is governed by the Code's purpose. *In re Comcoach Corp.,* 698 F.2d 571, 573 (2d Cir.1983). The purpose of chapter 9 is to allow municipalities the opportunity to remain in existence through debt adjustment and obtain temporary relief from creditors. Congress has explicitly stated in the legislative history that the courts do not have jurisdiction to interfere with the political and policy choices a municipality makes in running its organization; rather, courts are limited to approving or disapproving proposed plans for debt adjustment. *See* H.R.Rep. No. 595, 262–64.

■ The Court concludes that the members of Concerned Citizens who are not creditors do not have standing to be heard under § 1109(b). This Court should not be so liberal in granting applications to be heard as to overburden the debt adjustment process. *In re Public Service Co. of New Hampshire,* 88 B.R. 546, 554 (Bankr.D.N.H.1988). Where a party is merely interested in the outcome of the matter and does not have a direct legal interest in the chapter 9 proceeding, that party is not a "party in interest." *In re City of Bridgeport,* 128 B.R. 30, 31–32 (Bankr. D.Conn.1991). By allowing a large number of non-creditors to be heard in this action, the Court would be granting a blanket invitation to all parties in the area serviced by Addison. This would hamper, and unduly delay, the debt adjustment process.

### B.

As previously stated, Rule 2018(a) provides for intervention by entities not otherwise having a right to participate in the bankruptcy case. In the present case, the Court must interpret whether Rule 2018(a) gives the non-creditor members of Concerned Citizens a right to intervene.

---

4. It should be noted that Bankruptcy Rule 9014 does not make applicable Fed.R.Civ.P. 24, which provides, *inter alia,* "intervention of right." Rule 2018(a) provides for permissive intervention, but not intervention of right.

5. The list is non-exhaustive because § 1109 must be read in conjunction with § 102(3), which states that the term "including" is not limiting. Thus the use of the word "including" in § 1109(b) does not limit the "party in interest" status to those parties referred to in the subsection.

■ Granting permissive intervention is within the court's discretion. *In re Benny*, 791 F.2d 712 (9th Cir.1986); *In re Charter Co.*, 50 B.R. 57 (Bankr.W.D.Tex.1985) (court ultimately has discretion to allow or refuse intervention). As unlimited intervention could cause undue and prejudicial delays in the resolution of what are essentially disputes between two parties, "Rule 2018 gives courts the discretion to balance the needs of a potential intervenor against any delay or prejudice which would result from intervention." *In re City of Bridgeport*, 128 B.R. 686, 687 (Bankr.D.Conn.1991).

■ Intervention will be permitted upon the showing of cause. Cause constitutes an economic interest in the case or one of its aspects or a concern with its precedential ramifications. *Id.* at 687–88 (citing *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr.S.D.N.Y.1989)); *In re Public Service Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr.D.N.H.1988). Thus, intervention should not be allowed where the potential intervenor's interests are already adequately represented or where intervention would cause unwarranted delay or prejudice to the original parties. *Id.* at 551; *Ionosphere Clubs*, 101 B.R. at 853.

■ Concerned Citizens asserts that it has sufficient cause to intervene because without its participation in the case, the purpose of the municipal hospital might be evaded. In essence, Concerned Citizens argues that no controls exist over the development of Addison's plan. However, the Court concludes that the position of Concerned Citizens overlooks the provisions of chapter 9 (specifically § 943), and those provisions of chapter 11 made applicable to chapter 9 proceedings through § 901 (specifically §§ 1126, 1128 and 1129). These provisions give the court authority to confirm the plan *only if* it is satisfied that the plan is fair, equitable and feasible, and does not discriminate unfairly in favor of any creditor or class of creditors; that the provisions of chapter 9 are complied with (including the observance of state law); that all compensation paid incident to the plan is reasonable; that the plan is offered and accepted in good faith; and that the petitioner is not prohibited by law from tak-

ing any action necessary under the plan. 121 Cong.Rec. H39409–10 (daily ed. Dec. 9, 1975).

Based on this analysis, the Court concludes that Concerned Citizens has erred in its contention that Addison's plan development procedure lacks requisite controls. Moreover, the creditor members of Concerned Citizens have an automatic statutory right to be heard under 11 U.S.C. § 1109(b), and thus can adequately represent the interests of the group.

Congress intended municipalities to have more streamlined control in the debt adjustment period without interference from outside parties. To hold otherwise would be a violation of the United States Constitution and its reservation of sovereignty to the states.

### C.

■ The final argument made by Concerned Citizens is that its members can assert "special tax payer" status under 11 U.S.C. § 943 and therefore, have a right to intervene. However, this position must be rejected, because § 943 only allows special tax payers to object to confirmation, and does not allow intervention generally in the case. The motion before this Court is a motion to intervene, not to object to a plan which has not yet been proposed to the Court.

### V.

The creditor members of Concerned Citizens have an automatic statutory right to be heard on any issue in a bankruptcy case under 11 U.S.C. § 1109. Section 1109 is made applicable to this chapter 9 proceeding through 11 U.S.C. § 901. Therefore, any and all members of Concerned Citizens who are creditors may come before this Court on any matter in this bankruptcy proceeding.

Non-creditor members of Concerned Citizens do not have a right to be heard nor do they have a right to intervene. This Court has discretion to allow intervention by parties who are "interested" and who are not adequately represented in the proceeding. Here, however, the non-creditor members of Concerned Citizens are not interested parties. Even if they were, they would already

be adequately represented by the creditor members of the same group.

Accordingly, intervention should be denied.