In re ADELPHIA COMMUNICATIONS CORP., et al., Debtors.

Adelphia Communications Corp., et al., Plaintiffs,

v.

John Rigas, et al., Defendants.

Bankruptcy No. 02–41729 (REG).

Adversary No. 02–8051.

United States Bankruptcy Court, S.D. New York.

Nov. 25, 2002.

Boies, Schiller & Flexner, LLP, by Phillip C. Korologos, Armonk, NY, for Adelphia Communications Corp.

Dilworth Paxson, LLP, by Martin J. Weis, John J. Higson, Philadelphia, PA, for the Rigas Defendants and Rigas Entity Defendants.

Cozen O'Connor, by John T. Carroll, Wilmington, DE, for Ellen Rigas Venetis, Peter L. Venetis, Ergoarts, Inc., and Songcatcher Films, LLC.

Morrison & Foerster, LLP, by Jonathan P. Bach, Jun Tsutsumi, New York City, for James R. Brown.

Kasowitz, Benson, Torres & Friedman, LLP, by Adam L. Shiff, Mark Smith, Michelle L. Fivel, New York City, for Intervenor, the Official Committee of Unsecured Creditors of Plaintiff Adelphia Communications Corp.

Sidley, Austin, Brown & Wood, LLP, by Norman N. Kinel, Jerry L. Bregman, New York City, for Intervenor, the Official Committee of Equity Security Holders of Plaintiff Adelphia Communications Corp.

## DECISION AND ORDER ON MOTION TO INTERVENE

ROBERT E. GERBER, Bankruptcy Judge.

## DECISION RE RIGHTS AFTER INTERVENTION

In this adversary proceeding under the umbrella of the jointly administered chapter 11 cases of Adelphia Communications Corporation and its subsidiaries (collectively, "Adelphia"), the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders (collectively, the "Committees") moved for entry

of an order, pursuant to Fed. R. Bankr.P. 7024 and Fed.R.Civ.P. 24(a), permitting their intervention as a matter of right in this adversary proceeding. They claimed the ability to intervene as of right under Fed.R.Civ.P. 24(a)(1), which provides such a right when a statute of the United States confers an unconditional right to intervene, based on section 1109(b) of the Bankruptcy Code[1] and the Second Circuit's recent decision in *Term Loan Holder Committee v. Ozer Group, L.L.C. (In re Caldor Corp.),* 303 F.3d 161 (2d Cir.2002) (*"Term Loan Holder Committee"*),[2] making it clear that parties in interest possess an "unconditional right to intervene" in adversary proceedings under section 1109(b) and Fed. R.Civ.P. 24(a)(1).

By oral decision delivered from the bench, this Court granted the motion to intervene, but took under advisement exactly what the Committees' rights as a consequence of *Term Loan Holder Committee* would be, in light of objections by the defendants to some of the rights as intervenors that the Committees might seek—most significantly, to propound their own discovery demands, to participate in discovery other than as observers, to make motions, and to participate as parties with respect to settlement.

The matter before the Court presents the issue that was probably inevitable after the Second Circuit's recent decision in *Term Loan Holder Committee.* With the Second Circuit having ruled that parties in interest are entitled to intervene in adversary proceedings upon request, solely as a consequence of their rights under section 1109(b), what are their rights as intervenors? Are the intervenors allowed, as the defendants here fear, to open up "new fronts" against the defendants; to engage in their own discovery; to make their own motions, and to make their own demands with respect to settlement? In implementing the *Term Loan Holder Committee* ruling, how should bankruptcy courts reconcile *Term Loan Holder Committee* with a trilogy of other decisions of the Second Circuit[3] which discuss the circumstances under which entities other than the debtor—most commonly, creditors' committees—may assert, for the benefit of the estate, causes of action initially owned by the debtor?

On the current motion in this adversary proceeding, presenting an issue currently of first impression (but which the Court believes will arise repeatedly), the Court believes that the Second Circuit's several decisions in this area are best implemented by ruling that where, as here, the intervention is approved on the basis of *Term Loan Holder Committee* and section 1109, the intervenors should have the rights in this adversary proceeding generally corresponding to those that they have under

1. Bankruptcy Code section 1109(b), 11 U.S.C. § 1109(b), provides, in relevant part:

   A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

2. The Court uses this shorthand means of description to distinguish this decision from the Second Circuit's other *"Caldor"* decision, *Virginia Elec. & Power Co. v. Caldor, Inc. (In re Caldor, Inc.).,* 117 F.3d 646 (2d Cir.1997), a

major decision with respect to Bankruptcy Code section 366, and from the underlying *Caldor* chapter 11 case, discussed below.

3. *See Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises),* 779 F.2d 901 (2d Cir.1985) (*"STN"*); *Commodore International Ltd. v. Gould (In re Commodore International Ltd.),* 262 F.3d 96 (2d Cir.2001) (*"Commodore"*); *Glinka v. Murad (In re Housecraft Industries USA, Inc.),* 310 F.3d 64 (2d Cir.2002) (*"Housecraft"*).

section 1109(b) in the umbrella cases—*i.e.*, that they may "raise and may appear and be heard on any issue. . . ." The Court further believes that such intervenors should have the right fully to monitor the proceedings (including "sitting in" at depositions, and reviewing material produced in discovery) so they may move in the umbrella cases under *STN*, or secure consent under *Commodore* or *Housecraft*, to take over control of the causes of action now being prosecuted by the Debtors on behalf of the estate. The Court further believes, however, that having standing to raise issues and to appear and be heard—as parties in interest have under section 1109(b)—does not equate to ownership of the causes of action in question; it takes an *STN* or Commodore/*Housecraft* order to secure the latter. For that reason (and also because after intervention generally, courts have the power to control the proceedings before them to keep the litigation orderly), the Court believes that it does not necessarily follow that once having intervened, intervenors have the right to litigate as the possessors of causes of action do, or to act wholly free of any limitations imposed by the Court in the interests of orderly procedure.

However, the application of those general principles in this adversary proceeding must be governed by the particular needs and concerns to be addressed, and the context in which they are raised. Accordingly, while the Court agrees with the defendants that the intervenor Committees should not necessarily have all of the litigation rights of the plaintiff Adelphia, it agrees with the intervenor Committees that the Court should be slow to rule in advance on situations that might arise.

For those reasons, the Court now provides only generalized guidance, and expressly provides that any party in the litigation— the defendants, any intervenor or the plaintiff Adelphia—may later raise as an issue the propriety of any action taken or requested by the intervenor Committees. In particular, the defendants may seek a protective order or other appropriate relief in the event that the intervenor Committees are placing demands on the defendants that are perceived to be inappropriate or unduly burdensome in any way.[4]

### Background

The facts underlying the matter in controversy are straightforward. Plaintiff Adelphia commenced this adversary proceeding against defendants John, Timothy, Michael and James Rigas (major stockholders and former officers and directors of Adelphia), Ellen Rigas Venetis, and a number of corporations and other business entities that are alleged to be controlled by one or more of them; former Adelphia director Peter Venetis; and former Adelphia officers James Brown and Michael Mulcahey. After the present dispute was briefed and argued, but before it was decided, Adelphia amended its complaint. The complaint as amended alleges, among other things, claims under RICO,[5] section 10(b) of the Exchange Act (and Rule 10b–5 promulgated thereunder),[6] and common law, for alleged fraud, waste of corporate assets, and breaches of fiduciary duty. The complaint alleges that this is a core proceeding under 28 U.S.C. § 157(b), though this is debatable and not yet agreed to by the defendants, if it ever will be. By reason, *inter alia*, of the allegations under RICO and section

---

**4.** These determinations are likewise without prejudice to the rights of the Committees if they hereafter secure control of the causes of action themselves, under *STN* or *Commodore*.

**5.** 18 U.S.C. § 1962.

**6.** 15 U.S.C. § 78j, and 240 CFR § 240.10b–5, respectively.

10(b), federal non-bankruptcy statutes, and the defendants' desire for a jury trial, the defendants have moved for withdrawal of the reference (with respect to this adversary proceeding only), and their motion is now before the district court. At least at this juncture, the adversary proceeding is still before this Court.

As is typical in larger chapter 11 cases, an Official Committee of Unsecured Creditors ("Creditors Committee") was appointed by the United States Trustee. Additionally, while the value of the Adelphia estate is now uncertain, there is at least hope that it may be possible to make distributions to equity holders as well. Thus the Office of the United States Trustee also appointed an Official Committee of Equity Security Holders ("Equity Committee"). The two Committees, each of which is represented by counsel, regularly weigh in on issues of importance to their constituencies, or to the welfare of the bankruptcy estates as a whole, in the umbrella chapter 11 cases. While the value of the bankruptcy estates as a whole may determine the incremental importance to a particular constituency of the claims that are asserted in this adversary proceeding, it is clear that at least one or another of the constituencies represented by the two Committees would have a financial stake in the outcome of this adversary proceeding.

At least in substantial part for that reason, the two Committees moved to intervene in this adversary proceeding, as of right, under Fed.R.Civ.P. 24(a),[7] Bankruptcy Code section 1109(b), and *Term Loan Holder Committee*.[8] The defendants did not oppose intervention as such, but requested that the Court place limitations on the Committees' rights to participate as intervenors. Recognizing the Second Circuit's decision in *Term Loan Holder Committee*, the defendants did not oppose intervention by the Committees "to the extent they seek only to monitor these proceedings." (Defendants' Opp. Mem. at 2).[9] The defendants opposed intervention, however, "to the extent the Committees seek to open two additional fronts against Defendants," (*id.*), thereby prejudicing them "and resulting in additional, yet unnecessary, time and expense." (*Id.*) They noted the absence of any assertion by the Committees that the Committees' interests in the adversary proceeding were being inadequately represented and/or prejudiced by Adelphia, (*id.*), and stated that "the Committees basically seek to intervene and participate in all aspects of these proceedings, independent of the Debtors." (*Id.* at 3). The defendants expressed the particular concern that "[a]llowing the Committees to engage fully in the litigation by, among other things, conducting their own discovery and filing motions, would be an un-

7. Fed.R.Civ.P. 24 is made applicable to adversary proceedings in bankruptcy cases under Fed. R. Bankr.P. 7024.

8. In doing so, they did not submit a proposed complaint setting forth "the claim or defense for which intervention is sought." *See* Fed. R.Civ.P. 24(c). This was noted by the defendants as evidence of the lack of any material divergence of interest as between Adelphia, on the one hand, and the Committees, on the other (Defendants' Reply Mem. at 6), but was not argued to be a basis for an absolute denial of the Committees' intervention motion.

9. In connection with that, they stated, appropriately:

> Defendants do not oppose intervention to the extent it involves serving the committees with copies of pleadings, memoranda and discovery response[s], as well as providing notice to the committee regarding hearings and discovery.

*Id.* at 3 (possible typographical error corrected).

necessary drain on the estate and an unfair burden for Defendants." (*Id.* at 3). They further argued, in their reply, that even where courts permit intervention, courts nevertheless have the power to place appropriate conditions or restrictions on intervenors, for the efficient conduct of the proceedings. (Defendants' Reply at 3–4).

The Committees, in their response and sur-reply, asserted, at least impliedly, that the result in *Term Loan Holder Committee* that they have an *"absolute right"* to intervene (Committees Response at 3; emphasis in original) would make any limitations on their future rights inappropriate, and that if this Court were to grant their motion to intervene and then restrict their activity to "passively receiving documents and information," their intervention, and the holding in *Term Loan Holder Committee*, would thereby be trivialized as "idle gestures." (*Id.* at 9). They also urged the Court not to issue "a preemptive protective order" limiting their participation before the Committees had done anything to arguably warrant the issuance of such an order. (Committees Sur–Reply at 7).[10]

### Discussion

#### A.

The starting point for the analysis is the Second Circuit's decision in *Term Loan Holder Committee*. There, a joint venture of liquidators who had contracted with the Caldor estate, post-petition, to purchase inventory incident to Going Out of Business Sales, brought an adversary proceeding against the debtor Caldor asserting claims in contract and in fraud, seeking over $26 million in damages, with the purpose and/or effect of recovering a meaningful portion of the $223 million the joint venture had paid for the inventory. *See* 303 F.3d at 163–164. The Caldor chapter 11 estate was administratively insolvent, and the Term Loan Holder Committee ("TLHC," the holder of a $20 million administrative expense claim, which made it the largest holder of post-petition claims in the Caldor case), would have a substantial stake in the outcome of that adversary proceeding. Contending that it was the "true party in interest" in Caldor's chapter 11 case,[11] the TLHC moved, accordingly, to intervene, as a matter of right under Fed.R.Civ.P. 24(a)(1), and as a matter of discretion under Fed.R.Civ.P. 24(a)(2).

Noting a split in the cases at the time as to whether section 1109(b) would provide a basis for intervention in an adversary proceeding as of right, the bankruptcy court denied intervention as of right, and likewise denied it as a matter of discretion. *See* 303 F.3d at 164–165.[12] Its decision was affirmed by the district court, *id.* at 162, but reversed by the Second Circuit. *Id.* After engaging in a lengthy statutory analysis, and reviewing the caselaw authority on both sides of the question, the Second Circuit determined that section 1109(b) is applicable in adversary proceed-

---

**10.** Adelphia did not file papers with respect to this controversy, and in oral argument likewise took no position in this dispute; it did note at oral argument that at this juncture, at least, it is the litigant on behalf of the estate, and that there has been no suggestion that it has failed to vigorously prosecute the estate's claims in this adversary proceeding.

**11.** The debtor Caldor not only did not oppose the TLHC's intervention; it supported it, noting that it had "solicited and encouraged the active participation" of the TLHC in that adversary proceeding. *See* 303 F.3d at 164.

**12.** In connection with the latter determination, the bankruptcy court found that the debtor *Caldor* was obligated to act in the best interests of its creditors, and that the TLHC had failed to allege or adduce evidence establishing that *Caldor* would not adequately represent the Term Loan Lenders Committee's interests.

ings as it is in cases [13] under the Bankruptcy Code, and hence that "a statute of the United States confers an unconditional right to intervene," within the meaning of Fed.R.Civ.P. 24(a)(1). *Id.* at 176.

However, try as they might, neither side has adduced any language in *Term Loan Holder Committee* that in this Court's view materially advances its position as to the real issue in this adversary proceeding—what happens *after* the intervention. Nor does this Court's independent review of that decision. While this Court assumes that intervention by the TLHC was neither sought nor granted for an idle purpose, and that such is at least implicit in the Second Circuit's decision, it is at least possible that the purpose was no more than the salutary effect that the TLHC's briefs and advocacy might have on litigation being handled by its ally Caldor. So far as this Court can determine, the issues before the Court now were not before the court on the appeal in *Term Loan Holder Committee,* and the Second Circuit had no occasion to address them, nor does its discussion of the matters that *were* before it shed any significant light.

### B.

Accordingly, this Court looks to the underpinnings of the Second Circuit's decision, Bankruptcy Code section 1109(b).

That section provides, as previously noted, that:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Underlying the Second Circuit's conclusion in *Term Loan Holder Committee* was its view that this provision applies no less in an adversary proceeding than in a case under the Bankruptcy Code, and that the use of the word "case" in section 1109(b) should not be construed in a way that would exclude an adversary proceeding.

Given that, the reasonable corollary is that parties in interest should have the same rights in adversary proceedings that they have in cases. From that, it would follow that intervenor parties in interest have the right to raise any issue, and to appear and be heard on any issue, in an adversary proceeding, just as they have such rights in the umbrella case itself. It would likewise follow that they have the right to brief and argue such matters as they see fit, and (though here the matter becomes more abstract) to "raise" matters of concern to them, in case status conferences and by the filing of motions.

While there is a certain logic to this, this Court must note a matter not expressly

---

**13.** As the Second Circuit noted in *Term Loan Holder Committee,* "case" is a term of art in the bankruptcy context, *see* 303 F.3d at 168, referring to that which is commenced by the filing with bankruptcy court of a "petition" under the appropriate title of the Code—under one or another of Bankruptcy Code sections 301, 302, 303 or 304. *Id. See also ML Media Partners, L.P. v. Century/ML Cable Venture (In re Adelphia Communications Corp.),* 285 B.R. 127, 136 & n. 29 (Bankr.S.D.N.Y. 2002) (Gerber, J.) (same, and noting that it is the modern way of referring to what was commonly described as a "proceeding" under the now-repealed Bankruptcy Act) The "case" triggered by a bankruptcy petition is an "umbrella litigation often covering numerous actions that are related only by the debtor's status as a litigant." *Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.),* 907 F.2d 1280, 1283 (2d Cir.1990); *See also Bank United v. Manley,* 273 B.R. 229, 235 (N.D.Ala.2001) ("A title 11 case is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place." (internal quotation marks and citation omitted)).

discussed by the Second Circuit in *Term Loan Holder Committee;* there are at least usually differences in the matters heard in proceedings in cases under the Code and in adversary proceedings. Cases under the Code are proceedings in rem, in which the stakeholders (which include, of course, both Committees) have an interest in the maximization of the size of the res, in the division of the res, and in proceedings with respect to the future of a chapter 11 case, which typically have an effect on both. The right to "raise, appear and be heard" there gives the parties, who typically have an interest in the maximization of the size of the res, and/or in getting their lawful share or piece of it, the ability to raise, appear and be heard on issues that affect their interests in that regard, without first requiring them to establish their pecuniary interest in the matter at the bankruptcy court level.[14]

By contrast, adversary proceedings are in substance "full blown lawsuits within the larger bankruptcy case,"[15] in which rights under causes of action are adjudicated.

That is particularly so in adversary proceedings "to recover money or property," *see* Fed. R. Bankr.P. 7001(1), the type of adversary proceeding we have here. One or more of the parties "owns" the alleged cause of action, and/or has the right to prosecute it. In the first instance, the debtor owns the cause of action in an adversary proceeding and asserts it on behalf of the estate, although, at least in the Second Circuit, it is permissible, not uncommon, and often desirable for official committees to seek and obtain the right to assert the claim on behalf of the estate—either when there is doubt as to the debtor's ability or inclination to prosecute the claim vigorously,[16] or where the debtor consensually cedes control of the litigation over to the committee.[17]

Here there has been no suggestion, at least so far, that the debtor Adelphia has failed vigorously to prosecute this adversary proceeding, and no *STN* or *Commodore/Housecraft* order has been entered. At least at this juncture, all of the causes

14. Different rules apply on bankruptcy appeals, where the appellant needs to show that he, she or it is a "person aggrieved"—i.e., has an economic stake in the outcome. *See, e.g., In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 513 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985) (to appeal from an order from the bankruptcy court, one must be a "person aggrieved," meaning one who has been directly and adversely affected pecuniarily by the challenged bankruptcy court order); *In re Ionosphere Clubs, Inc.,* 208 B.R. 812, 815 (S.D.N.Y.1997) (Kaplan, J.); *In re Salant Corp.,* 176 B.R. 131, 133 (S.D.N.Y.1994) (Keenan, J.).

15. *Term Loan Holder Committee,* 303 F.3d at 170 n. 4, quoting *Section 1120(1) Committee of Unsecured Creditors v. Interfirst Bank Dallas, N.A. (In re Wood & Locker, Inc.),* 868 F.2d 139, 142 (5th Cir.1989).

16. *See STN,* 779 F.2d at 904 (holding that creditors' committees may initiate adversary proceedings in the name of the debtor in

possession, with the approval of the bankruptcy court, where, *inter alia,* the court finds that trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in failing to do so).

17. *See Commodore,* 262 F.3d at 99 (a creditors' committee may acquire standing to pursue the debtor's claims, with the approval and supervision of the bankruptcy court, if the debtor or trustee consents, and the suit by the committee is necessary and beneficial to the resolution of the bankruptcy proceedings); *Housecraft,* 310 F.3d at 70–71 (reaffirming the *Commodore* rule, and extending it to permit a secured creditor to join with chapter 7 trustee in joint prosecution of plenary litigation to set aside allegedly fraudulent transfers).

> Where a debtor plaintiff recovers in such a lawsuit, or an estate representative does so under the authority of *STN, Commodore,* or *Housecraft,* the proceeds are then distributed in the in rem proceeding as property of the estate.

of action in this adversary proceeding now belong to the debtor Adelphia.[18]

The rights to participate in an adversary proceeding, like any other lawsuit, may be thought of as falling along a continuum, with the right to file briefs and be heard in argument (rights similar to those of *amicus curiae*) at one end, and with the ownership or control of the underlying causes of action at the other. The controversy here concerns rights—the right to propound one's own document requests; to notice depositions, and/or ask one's own questions at them; to produce witnesses and to ask questions on direct or cross-examination at trial; and to be heard with respect to settlement in a manner other than by objection to a motion in the umbrella case under Fed. R. Bankr.P. 9019—of a hybrid nature, and it is debatable as to which side of the line such rights fall.

█ Decisions as to one end of the continuum are fairly easy. Even without "owning" the cause of action in question, intervenors like the Committees here, who have intervened under section 1109(b), must have the right to raise issues and appear and be heard on matters in the adversary proceeding to the same extent as they do in the umbrella case—which means the right to monitor the case in all respects;[19] to notice of proceedings (and the service of papers on them); the right to file their own papers; to argue and respond to arguments in court; and to raise matters of concern to them at case status conferences and, if necessary, by motion. To the extent that this means extra work for those, like the defendants, who are not the intervenors' allies, that is a necessary evil. Concerns in this respect can be ameliorated by measures of the type described in section "C" below.

█ However, decisions as to the other end of the continuum, and what should be regarded as such, are more difficult. It is clear that unless and until one or another of the Committees secures an *STN* or *Commodore/Housecraft* order, the debtor, and not the intervenor Committees, "owns" the cause of action, and it does not necessarily follow that just because the intervenor Committees are now parties in the adversary proceeding, they have the same rights as those who actually own the causes of action. *See Kirkland v. New York State Dept. of Correctional Services,* 711 F.2d 1117, 1126 (2d Cir.1983) ("the sum of rights possessed by an intervenor, even if granted unconditional intervention, is not necessarily equivalent to that of a party in a case and depends upon the nature of the intervenor's interest").[20] Intervenors *may* have the right to propound

---

**18.** It may have been for this reason that the Committees did not submit a proposed pleading with their motion to intervene, and the defendants barely mentioned the matter. Under the facts of this case, where the Committees were not claiming ownership of one or more causes of action in their own name or the ability to bring it derivatively in the name of the estate, and were intervening merely to vindicate their rights under section 1109(b), this Court did not regard their failure to submit a proposed pleading as a bar to their intervention.

**19.** The defendants do not dispute this, which follows from the spirit, if not also the letter, of section 1109(b). It also is important because it provides a basis under which the Committees may make an informed determination as to the need to secure an *STN* or *Commodore/Housecraft* order, and provide themselves with the factual predicate to make an application in the umbrella case for such an order if their request is opposed.

**20.** The Committees argue that *Kirkland* is distinguishable on its facts. That may be so, but any factual differences in the context in which the Second Circuit made those observations do not undercut the obvious truth of the Second Circuit's observation, or the binding authority of the Second Circuit's expression of that rule on this Court.

discovery requests, to notice depositions and/or to question at depositions, to ask questions at trial or to have rights with respect to settlement even when they do not "own" the underlying cause(s) of action, but that is not free from doubt (particularly given the lack of focus on the question in either side's briefs), and the Court believes that it is premature to make decisions of that character at this time, without knowing the particular desire in question.[21]

Thus the Court only partly answers the questions that the parties debated, and in particular does not determine, at this time, to what extent the rights in question should be those only of owners of an alleged cause of action, or those defending themselves with respect to it. With respect to these matters, which plainly are more difficult and fact specific, the Court agrees with the intervenor Committees that the Court should not now enter "a preemptive protective order," without further briefing and a clearer picture of the activity that is desired and the context in which the request is made.

### C.

■ Another matter must be noted as well. As the defendants note in their re-ply brief, courts may control the proceedings before them even after intervention, and, if necessary, limit actions by intervenors or require coordination, in the interests of judicial economy, avoiding harassment or excessive burdens, or otherwise in the interests of justice. *See Shore v. Parklane Hosiery Co.*, 606 F.2d 354, 356–357 (2d Cir.1979) (noting that "intervention of right ... might be 'subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings,'" and further stating that this was "not an innovative suggestion but was instead the recognition of a well-established practice").[22]

■ This Court has ruled that the Committee intervenors will, as a consequence of their ability to "raise" issues under section 1109(b), have the standing to bring up matters of concern to them, including by the filing of motions. This Court *may* determine that they have standing to propound discovery requests and examine in discovery or at trial as well, though at this juncture the Court regards these issues as debatable. But even assuming that the Committee intervenors have such standing under 1109(b), this Court believes that it

**21.** The Court notes that parties in interest do have the right, in contested matters in umbrella cases, to discovery, and without first obtaining leave of court. *See* Fed. R. Bankr.P. 9014 (providing, inter alia, that Fed. R. Bankr.P. 7026 through 7037, providing for discovery, normally as of right, in adversary proceedings also apply in contested matters). They have that right in connection with motions as to which they wish to take a position, and have a right to be heard under section 1109(b), without regard to their pecuniary interest in the underlying controversy or "ownership" of rights in connection therewith. It is arguable, but not necessarily clear, that this would provide a basis for discovery rights for intervenors, but for lack of adequate briefing as to the issue, and context for deciding the matter, the Court is not deciding the question now. Assuming, arguendo, that intervenors would have the right to discovery, the Court believes that the principles set forth in Section "C" below, enabling the Court to control proceedings before it, including controlling duplicative or burdensome discovery, would nevertheless be applicable, and thus, one way or another, inappropriate discovery requests would be subject to control by the court.

**22.** The Committees argue that this case too is factually distinguishable. Once more this Court notes that the context in which those observations were made is different from that here, but the observations made by the Second Circuit remain true.

would have the ability to maintain control, and to limit their requests (and/or require them to be coordinated with other requests), under the authorities cited above.[23]

While this or any other court would have the power to impose conditions or restrictions to facilitate the efficient conduct of future proceedings, whether it *should* exercise that power would present different questions. Once more this Court regards it as inappropriate to make that determination now; the parties may make such arguments as they see fit with respect to that down the road.

### D.

Further proceedings involving the intervenor Committees shall be governed by the principles set forth in this decision to the extent that determinations have been made now, and without prejudice to the rights of any party in future matters, to the extent that determinations have been deferred.

SO ORDERED.

---

**23.** Here the Committees are capably represented, are highly responsible, and are sensitive to the need to avoid the unnecessary expenditure of estate funds. The Second Circuit's broad holding in *Term Loan Holder Committee* is not limited, however, to official committees, or to party in interest intervenors who would be equally responsible; it applies, as does section 1109(b), to *any* party in interest. Given the risk that an intervenor in a given adversary proceeding would not be as responsible as those here, it is particularly important to note a court's inherent power to maintain control of the proceedings before it.