# United States Court of Appeals
## For the First Circuit

No. 17-1831

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO,

Debtor.

---

ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,

Plaintiffs, Appellees,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; RICARDO ROSSELLO NEVARES, in his official capacity as Governor of the Commonwealth of Puerto Rico; GERARDO JOSE PORTELA FRANCO, in his official capacity as Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority; RAUL MALDONADO GAUTIER, in his official capacity as Secretary of Treasury of the Commonwealth of Puerto Rico,

Defendants, Appellees,

---

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Movant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Laura Taylor Swain, U.S. District Judge*]

---

*Of the Southern District of New York, sitting by designation.

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

---

Luc A. Despins, with whom James B. Worthington, James T. Grogan III, William K. Whitner, Eric D. Stolze, Paul Hastings LLP, Juan J. Casillas Ayala, Diana M. Batlle-Barasorda, Alberto J. E. Añeses Negrón, Ericka C. Montull-Novoa, and Casillas, Santiago & Torres LLC were on brief, for movant-appellant.

Gregory Silbert, with whom Marcia L. Goldstein, Jonathan D. Polkes, Salvatore A. Romanello, Kelly Diblasi, Gabriel A. Morgan, Weil, Gotshal & Manges LLP, Eric Pérez-Ochoa, Alexandra C. Casellas-Cabrera, Lourdes A. Arroyo-Portela, Adsuar Muñiz Goyco Seda, Pérez-Ochoa, PSC, Howard R. Hawkins, Jr., Mark C. Ellenberg, Ellen M. Halstead, Cadwalader, Wickersham & Taft LLP, Heriberto J. Burgos-Pérez, Ricardo F. Casellas-Sánchez, Diana Pérez-Seda, and Casellas Alcover & Burgos P.S.C. were on brief, for plaintiffs-appellees.

Timothy W. Mungovan, with whom John E. Roberts, Martin J. Bienenstock, Stephen L. Ratner, Mark D. Harris, and Proskauer Rose LLP were on brief, for defendants-appellees the Financial Oversight and Management Board for Puerto Rico and the Commonwealth of Puerto Rico, by and through its representative the Financial Oversight and Management Board for Puerto Rico.

---

September 22, 2017

---

**HOWARD, Chief Judge.** In this case, the able district court judge followed the guidance provided in a prior opinion of ours. Unfettered by the constraints that bound the district court, we now chart a different course.

Movant-Appellant Official Committee of Unsecured Creditors ("UCC") appeals from the district court's denial of its motion to intervene in an adversary proceeding arising within the Commonwealth's debt adjustment case under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), see 48 U.S.C. §§ 2161-2177.[1] Because we hold that 11 U.S.C. § 1109(b), a provision of the Bankruptcy Code expressly incorporated by PROMESA, provides an "unconditional right to intervene" within the meaning of Fed. R. Civ. P. 24(a)(1), we reverse the order denying intervention and remand for further proceedings consistent with this opinion.

## I.

Congress enacted PROMESA in June 2016 to address an ongoing financial crisis in the Commonwealth of Puerto Rico ("Commonwealth"). Peaje Invs. LLC v. García-Padilla, 845 F.3d

---

[1] We have twice previously decided appeals under PROMESA. See Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd., 853 F.3d 548 (1st Cir. 2017); Peaje Invs. LLC v. García-Padilla, 845 F.3d 505 (1st Cir. 2017). Each of these prior cases related to the statute's "temporary stay of debt-related litigation against the Puerto Rico government." Peaje, 845 F.3d at 509. Because the Commonwealth has since entered debt adjustment proceedings, that temporary stay has expired by its own terms. See 48 U.S.C. § 2194(d)(2).

505, 509 (1st Cir. 2017). The statute created a Financial Oversight and Management Board ("Board") to "help Puerto Rico 'achieve fiscal responsibility and access to the capital markets.'" Id. at 515 (quoting 48 U.S.C. § 2121(a)). Among other things, PROMESA empowered the Board to oversee the development of an annual "Fiscal Plan" estimating the government's revenues and expenditures. 48 U.S.C. § 2141.

PROMESA also gave the Board the ability to commence quasi-bankruptcy proceedings to restructure the Commonwealth's debt under a part of the statute often referred to as "Title III." See id. § 2164(a). Title III expressly incorporates large swaths of the Bankruptcy Code, as well as the entirety of the Federal Rules of Bankruptcy Procedure. See id. §§ 2161(a), 2170. On May 3, 2017, the Board commenced Title III proceedings on behalf of the Commonwealth, thus triggering these provisions. It subsequently commenced Title III cases for certain Commonwealth instrumentalities. The district court ordered that all of the Title III cases be jointly administered.

On the same day that the Title III petition was filed, Plaintiffs-Appellees Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation (together, the "plaintiffs"), companies that insure certain Puerto Rico bonds, initiated an adversary proceeding within the larger

Title III case.[2]  The plaintiffs alleged that the Commonwealth's

Fiscal Plan (approved by the Board), as well as a recently enacted

Commonwealth statute implementing that plan, violated both PROMESA

and the United States Constitution.   The plaintiffs sought

declaratory relief, an injunction prohibiting the Commonwealth and

the Board from implementing the Fiscal Plan, and a stay of the

confirmation of any plan of adjustment in the Title III case.

The UCC was appointed in June 2017.  Such a creditors'

committee, the duties and powers of which are outlined by statute,

see 11 U.S.C. § 1103(c), is intended to serve as "the primary

negotiating  bod[y]  for  the  formulation  of  the  plan  of

reorganization" representing the interests of the "class[] of

creditors . . . from which [it was] selected."  H.R. Rep. No. 95-

595, at 401 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6357.  A

creditors' committee is "arguably the one party in interest that,

for all practical purposes, typically represents stakeholders with

---

[2] As discussed in more detail below, the word "case" has a
specialized meaning in this context.  "A bankruptcy case is what
is commenced by the filing of a petition for bankruptcy relief.
It is, in colloquial terms, the whole ball of wax."  7 Collier on
Bankruptcy ¶ 1109.04[1][a][i] (Alan N. Resnick & Henry J. Sommer
eds., 16th ed. 2016) [hereinafter Collier] (internal quotation
marks omitted).  The word "proceeding," by contrast, refers to
"any one of the myriad discrete judicial proceedings within a case
that is commenced by a request in a form of pleading, such as a
complaint, motion or application for judicial action. . . .
Collectively, the term 'case' encompasses all of the discrete
proceedings that follow the filing of a petition for bankruptcy
relief, including adversary proceedings."  Id.

the most interest in the outcome of virtually every proceeding." Collier ¶ 1109.04[2][d][ii]; see also Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1240 (3d Cir. 1994) (noting that bankruptcy statutes have "relieved" courts "of most administrative matters" such that "the responsibility for monitoring the operations of the debtor and its compliance with appropriate bankruptcy procedures has fallen largely to the creditors' committee").

Upon its appointment, the UCC filed a motion seeking "leave to intervene" in the adversary proceeding "under Bankruptcy Rule 7024." The relevant rule simply provides that Fed. R. Civ. P. 24 "applies in adversary proceedings." Fed. R. Bankr. P. 7024. Rule 24 states, in pertinent part, that "the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). The UCC's leading argument in district court was that 11 U.S.C. § 1109(b), one of the many subsections of the Bankruptcy Code made applicable in Title III proceedings, conferred such an "unconditional right." The statute provides that any "party in interest," specifically defined to include "a creditors' committee," "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The UCC alternatively argued that it was entitled to permissive intervention under Rule 24(b).

The plaintiffs opposed the UCC's attempt to intervene. The Board, for its part, filed a "limited opposition," taking the position that the UCC was not entitled to Rule 24 intervention, but that § 1109(b) independently allowed it to "appear, be heard, and raise any issue it has constitutional and prudential standing to raise." In its reply, the UCC "agree[d] to the scope—and limits—of intervention urged by the Oversight Board." The limited participation sought by the UCC included the ability to review discovery (but not to propound discovery requests), to attend depositions (but not to examine witnesses), and to file briefs and be heard at arguments.

On August 10, 2017, the district court issued an order denying the UCC's motion to intervene. With respect to intervention as of right, the court relied exclusively on a footnote from our decision in Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1142 n.8 (1st Cir. 1992), stating that § 1109(b) "does not afford a right to intervene under Rule 24(a)(1)." The district court went on to reject the UCC's request for permissive intervention.

This expedited appeal followed. In its briefing, the UCC continues to emphasize that it "seek[s] no greater level of participation" than that requested in its district court reply.

As an initial matter, we have appellate jurisdiction over the denial of the UCC's motion to intervene as of right. See, e.g., Peaje, 845 F.3d at 515. We review de novo the legal issue of whether § 1109(b) provides an "unconditional right to intervene" within the meaning of Rule 24. See Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re Caldor Corp.), 303 F.3d 161, 166 (2d Cir. 2002); see also Candelario-Del-Moral v. UBS Fin. Servs. Inc. of P.R. (In re Efron), 746 F.3d 30, 35 (1st Cir. 2014).

The district court's rejection of the UCC's argument on this point was based solely on the Thompson footnote indicating that § 1109(b) "does not afford a right to intervene under Rule 24(a)(1)." 965 F.2d at 1142 n.8. It was certainly understandable for the district court to rely on this language, which appears directly applicable to the present case. But Thompson's discussion of § 1109(b) was pure dicta. Indeed, that appeal arose from a Chapter 7 bankruptcy and, accordingly, § 1109(b) was inapplicable on its face. See 11 U.S.C. § 1109(b) (conferring the right to "raise and . . . appear and be heard on any issue in a case under this chapter" (emphasis added)); Hartford Underwriters Ins. v. Union Planters Bank, N.A., 530 U.S. 1, 8 (2000) (holding that

§ 1109(b) was "by its terms inapplicable" in case which had been "converted from Chapter 11 to Chapter 7").[3]

Far from turning on an interpretation of § 1109(b), Thompson was decided on the sole ground that the putative appellants, non-parties who had not even formally moved to intervene, lacked standing to appeal a bankruptcy court order approving the settlement of an adversary proceeding. See 965 F.2d at 1140. In reaching this conclusion, the court noted that "mere participation in a hearing on the approval of a settlement" did not "constitute de facto intervention." Id. at 1141-42. It was at this point that the court included a footnote stating that "[s]imilar limitations on participation by 'parties in interest' are recognized elsewhere under the Code." Id. at 1142 n.8 (emphasis added). It went on to cite § 1109(b) as one such example, as well as the Fifth Circuit's interpretation of that provision. See id. (citing Fuel Oil Supply & Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1286-87 (5th Cir. 1985)).

---

[3] In resisting this conclusion, the plaintiffs rely on our statement in LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 5 (1st Cir. 1999), that, while Chapter 7 includes no provision "comparable" to § 1109(b), a similar "right to be heard" still applies in that context. Even overlooking the fact that Mailman was decided seven years after Thompson, it is far from clear that the gloss provided by the former opinion could have served as a basis for allowing intervention as of right in the latter case. See Fed. R. Civ. P. 24(a)(1) (requiring "an unconditional right to intervene [provided] by a federal statute" (emphasis added)).

Because the Thompson footnote's discussion of § 1109(b) was dicta, we are not bound by it. See Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992). While the district court cannot be faulted for relying on the footnote, we possess a greater degree of "flexibility" than that court "with respect to [our] own precedents." Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004).

Having established that Thompson does not bind us, we consider afresh whether § 1109(b) confers an unconditional right to intervene in an adversary proceeding. In seeking an answer to this query, the district court "[a]ssum[ed] without deciding that [the] adversary proceeding[] is indeed a 'case' within the meaning of" the statute. It went on to hold that, pursuant to Thompson, even granting the UCC this favorable assumption, the participatory rights provided by § 1109(b) amounted to something less than Rule 24 intervention.

But the primary supportive authority cited by Thompson on this point relied on the very distinction between cases and adversary proceedings that the district court had just assumed away. In Fuel Oil, the Fifth Circuit began by frankly acknowledging that, "[b]ased on the Bankruptcy Code alone, . . . the argument that § 1109(b) creates an absolute right to intervene in adversary proceedings appears strong." 762 F.2d at 1286. Despite the support for such a reading in the plain language of

- 10 -

the statute, the court ultimately held that § 1109(b) did not apply in adversary proceedings. In reaching this result, it relied on courts' general hesitation to "find unconditional statutory rights of intervention," as well as various statutory provisions and rules that "draw[] distinctions between bankruptcy 'cases' and the proceedings related to them." Id. Two other circuits have, in dicta, suggested agreement with Fuel Oil's analysis of this issue. See Richman v. First Woman's Bank (In re Richman), 104 F.3d 654, 658 (4th Cir. 1997); Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.), 998 F.2d 783, 790 (10th Cir. 1993).[4]

In the more than thirty years since Fuel Oil was decided, however, the weight of persuasive authority has shifted considerably. Both the Second and Third Circuits have rejected Fuel Oil's reasoning, holding instead that § 1109(b) provides a statutory right to intervene under Rule 24(a)(1). See Caldor, 303 F.3d at 176; Phar-Mor, 22 F.3d at 1240 (citing Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.), 689 F.2d 445 (3d Cir. 1982)). In Caldor, the most recent appellate opinion to decide this issue, the Second Circuit appropriately began "with the language of the statute itself." 303 F.3d at 167

---

[4] Richman, like Thompson, was a Chapter 7 case, so § 1109(b) was facially incapable of providing the requisite statutory right of intervention. See Richman, 104 F.3d at 659 n.7. In Kaiser, the Tenth Circuit held that the putative appellants were not parties in interest and therefore were not entitled to the rights conferred by § 1109(b). See 998 F.2d at 788.

- 11 -

(citation omitted). The court explained that the word "case," as used in the bankruptcy context, "is a term of art" with a specialized meaning. Id. at 168. It "refers to litigation 'commenced by the filing with the bankruptcy court of a petition' under the appropriate chapter of Title 11." Id. (citing 11 U.S.C. §§ 301, 302, 303(b), 304(a)). The term "proceeding," on the other hand, refers to a "particular dispute or matter arising within a pending case—as opposed to the case as a whole." Id. (citation omitted). This distinction between the larger case and the various subsidiary proceedings is consistent with our own precedent, as well as the leading treatise. See Thompson, 965 F.2d at 1140 ("[A]n adversary proceeding is a subsidiary lawsuit within the larger framework of a bankruptcy case."); Collier ¶ 1109.04[1][a][i]. Because "the plain text of § 1109(b) does not distinguish between issues that occur in . . . different types of proceedings within a Chapter 11 case," the Second Circuit concluded that the statute applies to adversary proceedings. Caldor, 303 F.3d at 169 (emphasis omitted).

We believe that the Second and Third Circuits have the better view and, accordingly, hold that the UCC was entitled to intervene under § 1109(b) and Rule 24(a)(1). The statutory language is, indeed, quite broad, providing that "a creditor's committee . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis

- 12 -

added).  We agree with the Third Circuit that "[i]t is unlikely that Congress would have used such sweeping language if it had not meant 'case' to be a broadly inclusive term."  Marin, 689 F.2d at 451.  "Because every issue in a case may be raised and adjudicated only in the context of a proceeding of some kind, it is apparent that the reference . . . to 'any issue in a case' subsumes issues in a proceeding."  Collier ¶ 1109.04[1][a][ii].  And the rights conferred by § 1109(b) are unconditional, as the provision imposes no conditions whatsoever on the ability of a party in interest to raise issues.[5]  Like the Second and Third Circuits, we find the counterarguments to this interpretation unpersuasive.  See Caldor, 303 F.3d at 170-76; Marin, 689 F.2d at 450, 453-56.

The plaintiffs' argument against intervention is largely predicated on their contention that § 1109(b) does not provide an unconditional right to participate in an adversary proceeding. The plaintiffs do, however, also point out that the statute "says nothing about intervention at all."  This language suggests that the right to appear and be heard under § 1109(b) amounts to

---

[5] The plaintiffs' argument to the contrary is largely rooted in their conflating unqualified rights and unconditional ones. They assert that "the right conferred by Section 1109(b) is qualified, not unconditional," and proceed to cite a number of decisions restricting the participation of parties in interest to varying degrees.  As explained below, the rights provided by § 1109(b), and intervention rights generally, may be qualified in a number of ways at the district court's discretion.  But this fact does nothing to alter the unconditional nature of the statute's applicability.

something less than a right to intervene. In light of courts' broad discretion to control and limit the scope of intervention, discussed in more detail below, we view the rights described in § 1109(b) to be entirely consistent with intervention rights generally. Accordingly, § 1109(b) provides the UCC with an "unconditional right to intervene" in the adversary proceeding. Fed. R. Civ. P. 24(a)(1).[6]

Our holding that the UCC is entitled to participate in the district court proceedings does not, of course, dictate the scope of that participation. See Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.), 285 B.R. 848, 851 (Bankr. S.D.N.Y. 2002) ("[I]t does not necessarily follow that once having intervened, intervenors have the right to litigate as the possessors of causes of action do, or to act wholly free of any limitations imposed by the Court in the interests of orderly procedure."). Crucially, "courts are not faced with an all-or-nothing choice between grant or denial" of an intervention motion. United States v. City of Detroit, 712 F.3d 925, 931-32 (6th Cir. 2013) (citing Fed. R. Civ. P. 24, advisory committee's note to 1966 amendment ("Intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other

_____

[6] Because we hold that Rule 24(a)(1) is satisfied, we need not consider the UCC's alternative argument that the district court erred in denying its request for permissive intervention under Rule 24(b).

- 14 -

things to the requirements of efficient conduct of the proceedings.")). This flexibility allows district courts to "get[] all interested parties to the table" in the hopes of reaching "an effective and fair solution," while at the same time "preventing an expansion of . . . scope" capable of threatening the court's "control" over the matter. Id. at 932. These competing concerns are particularly poignant in the present case, which represents "the largest proceeding to restructure debt in the history of the American municipal bond market."

The precise scope of the UCC's intervention is a matter committed to the district court's "broad discretion." Id. at 933. Courts have exercised that discretion to limit the participation of intervenors as of right in a number of ways. An intervening party, for example, cannot "preclude other parties from settling their own disputes." Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 529 (1986); see also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 181 (2d Cir. 2005) (holding that § 1109(b) "does not authorize creditors to pursue settlement" of an adversary proceeding). Courts may further restrict intervention to "the claims raised by the original parties," Fund for Animals, Inc. v. Norton, 322 F.3d 728, 737 n.11 (D.C. Cir. 2003), or a particular set of issues, see Harris v. Pernsley, 820 F.2d 592, 599 (3d Cir. 1987). Finally, intervenors may be denied discovery, at least in

some circumstances. See United States v. Albert Inv. Co., 585 F.3d 1386, 1396 (10th Cir. 2009).

Because it held that the UCC was not entitled to intervene in the adversary proceeding, the district court had no occasion to consider the scope of such intervention. This is a matter best left for that court to decide in the first instance given its "greater familiarity with this case and interest in managing its own docket." Detroit, 712 F.3d at 933.[7] We do observe, however, that the limited participation requested by the UCC appears to fit comfortably within the framework outlined above.

The district court also declined to rule on whether the UCC complied with Rule 24(c), which requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). We have recently cited with approval cases holding that a court has the discretion to permit intervention in some circumstances

---

[7] Along similar lines, the district court did not address the UCC's standing to appear and be heard on any particular issue in the adversary proceeding. While Article III standing is "almost always satisfied with respect to any party in interest in a chapter 11 case," courts have additionally required that "the interests of a party seeking to participate lie within the 'zone of interests' protected by the particular statute or legal rule implicated in the given proceeding." Collier ¶ 1109.04[4]; see also In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992) (holding that § 1109(b) was not "intended to waive" this "limitation[] on standing"). Any ruling on this point in the present appeal would be premature, but we note the standing issue as another possible source of limitation on the UCC's participation in the adversary proceeding.

even when the motion to intervene is not accompanied by a pleading. See Peaje, 845 F.3d at 515.  We also stated in Peaje that, in the absence of prejudice to a party, it would be an abuse of discretion to deny intervention for failure to include a pleading.  Id.  In the unique circumstances of the present case, we find that the UCC's interest in the litigation was sufficiently clear to excuse any technical non-compliance with Rule 24(c).  Consistent with its above-discussed discretionary powers, the court may, however, require that the UCC file a more specific and comprehensive pleading.

### III.

For the foregoing reasons, the district court's order denying intervention is **REVERSED**, and the matter is remanded for proceedings consistent with this opinion.  The mandate shall issue forthwith, and the parties shall bear their own costs.